```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF TEXAS
                              LAREDO
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. |
| | ) | 5:10-CR-1311 |
| v. | ) | (11-CV-167) |
| | ) | |
| JUAN GAMEZ-ROJAS, | ) | |
| | ) | |
| Defendant. | ) | **MEMORANDUM OPINION & ORDER** |

                       **  **  **  **  **

Defendant Juan Gamez-Rojas filed a motion for relief under 28 U.S.C. § 2255 (DE 31) to which the government has filed a motion for summary judgment or, in the alternative, a response and a motion to dismiss (DEs 45, 46 & 47). Although afforded an ample opportunity to do so, Gamez has not filed any form of reply (DEs 48 & 49). Having considered the entire record, and the Court being advised,

**IT IS ORDERED** that Gamez's motion for relief under 28 U.S.C. § 2255 (DE 31) be, and the same hereby is, **DENIED** for the reasons which follow.

I.

JURISDICTION

Gamez challenges the judgment of conviction and sentence imposed by this Court on February 28, 2011, and entered by the district clerk on March 1, 2011 (DE 27). On November 30, 2011,

Gamez timely filed the subject motion to vacate under 28 U.S.C. § 2255.

II.

STATEMENT OF THE CASE

A. Course Of Proceedings.

Gamez was the subject of a one-count Indictment returned by a Federal Grand Jury for the Southern District of Texas, Laredo Division, on May 25, 2010. Count 1 charged that on May 25, 2010, Gamez, an alien who had previously been denied admission, excluded, deported and removed, had departed the United States while an order or exclusion, deportation and removal was outstanding, was found in the United States, not having obtained the consent of the Attorney General of the United States to reapply for admission into the United States prior to March 1, 2003, and having not obtained consent from the Secretary of Homeland Security to reapply for admission into the United States on or after March 1, 2003, in violation of 8 U.S.C. § 1326. (PSR ¶ 1.)

On July 15, 2010, Gamez pled guilty to the Indictment pursuant to a written Rule 11(c)(1)(A) and (c)(1)(B) Plea Agreement. In return for a guilty plea the Government would recommend: (a) dismissal of any remaining counts at the time of sentencing; (b) the Government would not oppose, at sentencing, Gamez's request that he receive a two-level downward adjustment,

pursuant to U.S.S.G. § 3E1.1(a), should Gamez accept responsibility as contemplated by the Sentencing Guidelines; and (c) if Gamez qualified for an adjustment pursuant to U.S.S. G. § 3E1.1(a), and Gamez's guidelines prior to applying the U.S.S. G. § 3E1.1 is 16 or higher, the government agreed to move the Court to grant Gamez an additional one (1) level reduction in his guideline offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b) based on Gamez's timely notifying authorities of his intention to plead guilty. (PSR ¶ 2.)  In his plea agreement Gamez waived the right to appeal the sentence imposed and the right to contest or collaterally attack the sentence after the conviction or sentence has become final. (PSR ¶ 3.)

On February 28, 2011, Gamez was sentenced to 57 months in the custody of the Bureau of Prisons and three years of supervised release.  He also received a special assessment of $100.00.  Gamez, in accord with his plea agreement waiver, did not file a notice of appeal.

B. Specific Performance Of The Plea Agreement

As an initial matter, the government argues that - notwithstanding his claim to the contrary - Gamez voluntarily waived his right to collaterally attack his conviction and sentence. As the government points out, Gamez entered into a plea agreement which provided that in exchange for certain

recommendations pertaining to his sentence, he agreed to a broad and unequivocal waiver of appeal, and waiver of collateral relief.

The right to appeal a conviction and sentence is a statutory right, not a constitutional one, and a defendant may waive it as part of a plea agreement. *United States v. Burns*, 433 F.3d 442, 445 (5th Cir. 2005). "In determining whether a waiver is enforceable, [the Fifth Circuit] employ[s] normal principles of contract interpretation." *United States v. Palmer*, 456 F.3d 484, 488 (5th Cir. 2006). When construing a plea agreement, "[t]he language in the appellate waiver must be afforded its plain meaning in accord with the intent of the parties at the time the plea agreement was executed." *United States v. Cortez*, 413 F.3d 502, 503 (5th Cir. 2005) (citing *United States v. McKinney*, 406 F.3d 744, 745–47 (5th Cir. 2005). Given the significance of the rights involved, the Court construes appeal waivers narrowly, and against the government. *United States v. Harris*, 434 F.3d 767, 770-71, n. 2 (5th Cir. 2005) (*citing United States v. Somner*, 127 F.3d 405, 408 (5th Cir. 1997)).

A defendant's waiver of his statutory right to collaterally challenge his conviction under § 2255, like a waiver of his right to appeal, is generally enforceable if the defendant knowingly and voluntary waived his rights. *United States v.*

*White*, 307 F.3d 336, 339, 341 (5th Cir. 2002)(*citing United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994)); *see also United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005).

Gamez attempts to get around this waiver by arguing in his motion that he was ". . . coerced by his counsel into waiving certain rights by lying to movant and entering into plea [a] agreement before movant's sentencing without movant's knowledge or consent . . ."  Fairly read, Gamez's claim is that his guilty plea was not intelligently made and was therefore unknowing or involuntary.  However, his claim, at first glance, arguably falls outside the scope of his waiver - and thus, would not be subject to it, since it challenges the voluntariness of his plea. Nonetheless, the record of the rearraignment (DE 38, RT at 8 - 9) clearly shows that the Court asked Gamez if he was making his guilty plea of his own free will – which he testified that he was and testified he was not threatened or forced to do so – thus the plea was knowing and voluntary and this motion falls within the scope of Gamez's waiver.  If so, the waiver of his § 2255 rights, contained in the Plea Agreement, would be enforceable and, as a result, Gamez's remaining claims would be barred by the waiver.

C. Voluntariness Of The Plea

Generally, "an informed and voluntary waiver of post-conviction relief is effective to bar such relief." *Wilkes*, 20

F.3d at 653. When, however, a defendant claims that the waiver was tainted because his counsel was ineffective in negotiating the plea agreement or otherwise affected the voluntariness of the plea, such claims may survive the waiver. *White*, 307 F.3d at 343. A review of the § 2255 motion discloses a challenge to the voluntariness of the plea agreement, and thus the waiver, by alleging that "[M]ovant was coerced by his counsel into waving certain rights, by lying to movant and entering into [a] plea agreement before movant's sentencing without movant's knowledge or consent to do so." This allegation superficially suggests that the waiver is void and unenforceable. *White*, 307 F.3d at 343-44 (An ineffective assistance of claim survives a § 2255 waiver "only when the claimed [ineffective] assistance directly affected the validity of that waiver or the plea itself."). However, as discussed below, this allegation is without merit.

The record demonstrates that his plea, and thus the waiver, was knowing and voluntary. (RT at 8 - 9; also at 12, 16). A defendant's waiver of his right to appeal must be informed and voluntary. *United States v. Baymon*, 312 F.3d 725, 727 (5th Cir. 2002). "The defendant must know that he had 'a right to appeal his sentence and that he was giving up that right.'" *United States v. Gonzalez*, 259 F.3d 355, 357 (5th Cir. 2001) (quoting *United States v. Portillo*, 18 F.3d 290, 292 (5th Cir. 1994)). When a defendant's plea agreement informs him of his right to

appeal his sentence and states that, by entering the plea agreement, he forfeits that right, the waiver is enforceable if "the record of the Rule 11 hearing clearly indicates that a defendant has read and understands his plea agreement, and that he raised no question regarding a waiver-of-appeal provision . . . ." *Portillo*, 18 F.3d at 292-93 (distinguishing *United States v. Baty*, 980 F.2d 977, 978-79 (5th Cir. 1992)); *accord Bond*, 414 F.3d 542, 544 (5th Cir. 2005)("Because he indicated that he read and understood the agreement, which included explicit, unambiguous waivers of appeal, the [appellate] waiver was both knowing and voluntary").

Turning to Gamez's rearraignmnent hearing, it is clear that the presiding Magistrate Judge carefully complied with the requirements of Fed. R. Crim. P. 11.  During that proceeding, Gamez testified:

a) that his attorney went over the plea agreement with him before he signed it and that the signature on the plea agreement was his (RT 6);

b) that he had enough time to discuss his case, privately, with his attorney (RT 7);

c) that no one forced or threatened him to get him to plead guilty (RT 8);

d) that he was pleading guilty freely and voluntarily and that it was his decision to plead guilty (RT 8);

e) that he understood what he faced if he pled guilty (RT 10 - 11).

f) Gamez testified that he understood that he was giving up his right to appeal and understood, as the Court explained, that he was giving up his right to come back later on and complain about the case, his plea, his conviction, his sentence and detention (RT 11 - 12).

g) Gamez testified that he understood that he would have to stay with his plea of guilty, and accept the sentence, even if his score was different than what he thought it was going to be or different than what his attorney estimated his score was going to be (RT 14).

h) Gamez testified that he understood that he would have to accept whatever sentence the judge gave him since he was giving up his right to appeal (RT 15 - 16).

i) Gamez testified that he understood the plea agreement the way the Court explained it to him (RT 16).

j) Gamez testified that no one made any promises to him, to get him to plead guilty, other than what the Court told him was written in his plea agreement (RT 16).

k) Gamez testified that he understood that by pleading guilty he gave up his right to a trial (RT 18).

l) Gamez testified that he understood everything that was explained to him by the Court during the rearraignment (RT 19).

Based on these representations under oath, at the conclusion of the rearraignment, the Report and Recommendation of the Magistrate Judge contained a finding that, *inter alia*, "2. the defendant fully understands the nature of the charges and penalties; 3. The defendant understands their [sic] Constitutional and statutory rights and wishes to waive these rights; 4. The defendant's plea is made freely and voluntarily." (DE 17). The Court adopted the findings of fact and conclusions of law in the Magistrate Judge's Report and Recommendation to which there were no objections. (DE 20).

The record fully supports the finding that Gamez knowingly and voluntarily entered the plea agreement. The waiver provision in the written plea agreement is clearly written and it describes the waiver's impact on Gamez's right to file a § 2255 motion. As stated above, the Court found that Gamez's guilty plea was knowing and voluntary.

Gamez was under oath during his rearraignment, and his testimony demonstrates that the waiver of his appeal and his right to contest or collaterally attack his conviction or sentence was given freely and voluntarily. Gamez's sworn statements in open Court are entitled to a strong presumption of truthfulness. *United States v. Lampaziane*, 251 F.3d 519, 524 (5th Cir. 2001)(citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). The Fifth Circuit affords "great weight to the

defendant's statements at the plea colloquy." *United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002). Thus, Gamez's sworn statements preclude the relief he seeks in this proceeding.

D. Summary

Gamez knew of the potential punishment he faced, he knew the recommendations of the government were not binding on the Court, and that his plea was knowing and voluntary. Gamez's testimony made clear that his decision to plead guilty was voluntary and that no one had forced him to plead guilty. Gamez's own testimony shows that he understood that the rights he was giving up by pleading guilty - and that same testimony demonstrates that he was doing so voluntarily.

Thus, under the terms of the plea agreement, Gamez shall be held to the bargain to which he agreed since he knowingly and voluntarily waived his right to file a § 2255 motion.

Gamez's motion is denied.

As no reasonable jurist would disagree, no certificate of appealability shall issue.

This the 22nd day of August, 2012.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge